# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)                    MDL 875

---

**This Document Relates To:**

| | | |
|---|---|---|
| 1. | Richard Denzel | EDPA No. 09-66545 |
| 2. | Boyd Gilchrist | EDPA No. 09-66547 |
| 3. | Robert Glaser | EDPA No. 09-66548 |
| 4. | Leslie Hanson | EDPA No. 09-66549 |
| 5. | Martin Ketterling | EDPA No. 09-66554 |
| 6. | Teanus Loeb | EDPA No. 09-66561 |
| 7. | Stephen Morrell | EDPA No. 09-66564 |
| 8. | Walter Poppke | EDPA No. 09-66567 |
| 9. | Pete Riedinger | EDPA No. 09-66570 |
| 10. | Frank Unser | EDPA No. 09-66574 |
| 11. | Joe Vogel | EDPA No. 09-66577 |
| 12. | Frank Willson | EDPA No. 09-66578 |

## REPORT AND RECOMMENDATION
### AS TO THE MOTIONS FOR SUMMARY JUDGEMENT OF
### DEFENDANT S.O.S. PRODUCTS COMPANY, INC.

THOMAS J. RUETER                                           July 30, 2010
Chief United States Magistrate Judge

Presently before the court are twelve motions for summary judgment of defendant,

S.O.S. Products Company, Inc. ("defendant" or "SOS"), filed pursuant to Fed. R. Civ. P. 56(b)

(individually, the "Motion" or "Def.'s Mot.").  Plaintiff filed responses to defendant's motions.

("Pl.'s Resp.") and defendant filed replies thereto ("Def.'s Reply").  For the reasons that follow,

the court recommends that the Motions filed against plaintiffs Glaser, Denzel, Willson, Poppke,

Loeb, Ketterling and Gilchrist be **DENIED** and the court recommends that the Motions filed

against plaintiffs Vogel, Unser, Hanson, Riedinger and Morrell be **GRANTED**.[1]

---

[1]      At oral argument, counsel for the parties agreed to dismiss plaintiffs' claims for
conspiracy, deceit, fraud, market share, enterprise liability, and alternative liability.  (N.T.
7/14/10 at 7-9.)

According to defendant's Motions, forty-three plaintiffs, including the above-captioned plaintiffs, filed asbestos personal injury actions in May 1989, in North Dakota state court. (Mot. at 2.) All of the cases were removed by a defendant to the United States District Court for North Dakota, Southwest Division. Id. Five of the forty-three cases were resolved. Id. In March 1992, the remaining thirty-eight cases, including the above-captioned cases, were transferred to this court pursuant to 28 U.S.C. § 1407 and consolidated as part of MDL-875 by the Judicial Panel on Multidistrict Litigation.[2] The Honorable Eduardo C. Robreno referred the

---

[2]      Ordinarily, in an action based on diversity of citizenship jurisdiction under 28 U.S.C. § 1332, the court must apply the substantive law of the state in which it sits, including its choice of law rules. See Klaxon v. Stentor Elec. Mfg. Co., Inc., 313 U .S. 487, 496 (1941); Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008). When a diversity action is transferred pursuant to 28 U.S.C. § 1407, however, the transferee court is obligated to apply the state substantive law as determined by the choice of law analysis required by the state in which the action was filed. See Ferens v. John Deere Co., 494 U.S. 516, 524-32 (1990) (evaluating applicable law after change of venue under 28 U.S.C. § 1404(a) and holding that transferee forum was required to apply law of transferor court, regardless of which party initiated transfer); Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (in cases where venue was changed under 28 U.S.C. § 1404(a) the transferee district court is obligated to apply the state law that would have been applied if there had been no change of venue). See also De George v. Am. Airlines, Inc., 338 Fed. Appx. 15 (2d Cir. 2009) ("When related cases filed in various federal districts have been consolidated for pre-trial purposes before one court under 28 U.S.C. § 1407(a), . . . , a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed."), cert. denied, __ U.S. __, 130 S. Ct. 1068 (2010). The court must therefore apply the choice of law rules of North Dakota, the state in which this case was filed.

     North Dakota courts apply the "significant contacts" test to determine which state's laws apply. Nodak Mut. Ins. Co. v. Wamsley, 687 N.W.2d 226 (N.D. 2004); Issendorf v. Olson, 194 N.W.2d 750, 756 (N.D. 1972). Under this two-pronged analysis, a court determines all of the relevant contacts which might logically influence the decision of which law to apply and must also determine which jurisdiction has the more significant interest with the issues in the case. Wamsley, 687 N.W.2d at 231. In accordance with this standard, the court will apply North Dakota law in deciding the substantive issues.

     With regard to matters of procedure, the court will apply federal procedural law as interpreted by the United States Court of Appeals for the Third Circuit, the circuit in which this court sits. See In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1178 (D.C. Cir. 1987), aff'd, 490 U.S. 122 (1989). See also In re Donald J. Trump Casino Sec. Litig., 7 F.3d

Motions to the undersigned for a Report and Recommendation as to the issue of causation. Oral

argument was heard on July 14, 2010.

I.      **LEGAL STANDARD – MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where "the pleadings, the discovery and the

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). A fact is "material" if it might affect the outcome of the suit under the governing

substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Furthermore, an

issue is "genuine" if a reasonable jury possibly could hold in the nonmovant's favor on that issue.

Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). To demonstrate

that no material facts are in dispute, the moving party must show that the non-moving party has

failed to establish one or more essential elements of his or her case. Hugh v. Butler County

Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317,

323-24, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)). In analyzing the evidence, the court will view

the facts in the light most favorable to the non-moving party and draw all inferences in that

party's favor. Prowel v. Wise Bus. Forms, Inc., 579 F.3d 285, 286 (3d Cir. 2009).

Once the moving party has demonstrated that there is no genuine issue of material

fact, the non-moving party must present "specific facts showing that there is a genuine issue for

trial." Fed. R. Civ. P. 56(e). "While the evidence that the non-moving party presents may be

either direct or circumstantial, and need not be as great as a preponderance, the evidence must be

357, 368 n.8 (3d Cir. 1993) (assuming without deciding that the law of the § 1407 transferee
district controls federal questions); In re Auto. Refinishing Paint, 229 F.R.D. 482, 486-87 (E.D.
Pa. 2005) (applying the transferee court's interpretation of federal law).

more than a scintilla." <u>Hugh</u>, 418 F.3d at 267 (citing <u>Anderson</u>, 477 U.S. at 251).

## II.    DISCUSSION

Plaintiffs allege that each suffers from an asbestos-related disease as a result of his exposure to an asbestos-containing product manufactured, supplied or distributed by the various defendants in these cases. Plaintiffs base their claims for damages on allegations of the defendants' negligence, strict liability, and breach of warranty.

Defendant SOS Products filed the motions for summary judgment that are presently before the court. SOS Products "mixed and compounded," <u>inter alia</u>, an asbestos-containing furnace cement. <u>See</u> Pl.'s Resp. at Ex. 1, Defendant's Answers to plaintiff's Interrogatories and Request for Production of Documents at 4-6. The furnace cement was premixed and was packaged in metal cans. <u>Id.</u> It was sold between 1946 and the early 1970s. <u>Id.</u> It was intended to be used for furnaces or similar applications. <u>Id.</u>

### A.    Causation under North Dakota law

Under North Dakota law, to succeed in a negligence action, a plaintiff must prove that the defendant owed him a duty, the defendant failed to discharge that duty, and the plaintiff suffered an injury that was proximately caused by the defendant's negligence. <u>Klimple v. Bahl</u>, 727 N.W.2d 256, 258 (N.D. 2007). "A proximate cause is a cause which, in natural and continuous sequence, produces the injury and without which the injury would not have occurred." <u>Rued Ins., Inc. v. Blackburn, Nickels & Smith, Inc.</u>, 543 N.W.2d 770, 773 (N.D.1996). Furthermore, a proximate cause is one which played a substantial part in bringing about an injury; there may be more than one proximate cause. <u>See</u> <u>Beilke by Beilke v. Coryell</u>, 524 N.W.2d 607, 609 (N.D. 1994). A plaintiff may establish the elements of his claim, including

causation, by circumstantial evidence. Farmers Ins. Exchange v. Schirado, 717 N.W.2d 576

(N.D. 2006). See also Heng v. Rotech Med. Corp., 688 N.W.2d 389, 399 (N.D. 2004)

("[C]ircumstantial evidence may provide an inference of causation.").

In its motions for summary judgment, defendant contends that each plaintiff has

failed to produce evidence that such plaintiff's injury was caused by defendant's product.

Specifically, defendant contends that there is a "complete lack of sufficient and credible evidence

of exposure to asbestos-containing products supplied, distributed or manufactured" by defendant.

(Def.'s Mot. at 1-2.) Thus, this court must determine whether each plaintiff has presented

sufficient evidence to raise a genuine issue of material fact on the causation issue.

As the parties acknowledge, however, the North Dakota Supreme Court has not

addressed the question of how much circumstantial evidence a plaintiff in an asbestos-related

claim must produce in order to survive a summary judgment motion based on the issue of

causation. Defendant urges the court to apply the so-called "frequency, regularity and

proximity" test of causation as set forth in Lohrman v. Pittsburgh Corning Corp., 782 F.2d 1156

(4th Cir. 1986). (Def.'s Mot. at 5-7.) In accordance with this test, "to support a reasonable

inference of substantial causation from circumstantial evidence, there must be evidence of

exposure to a specific product on a regular basis over some extended period of time in proximity

to where the plaintiff worked." Lohrman, 782 F.2d at 1163.

In response, plaintiffs argue strenuously against the application of the frequency,

regularity, and proximity test, noting that no North Dakota appellate court has addressed a "non-

exposure" motion in an asbestos case, and further aver that North Dakota trial courts have

applied a liberalized standard as to the sufficiency of exposure evidence. Plaintiffs also argue

5

that the application of the frequency, regularity and proximity test is inconsistent with the law of North Dakota with respect to causation. In addition, plaintiffs also note that this test has been criticized by other courts. See e.g., Weakley v. Burnham Corp., 871 A.2d 1167, 1177 (D.C. 2005) (reasoning that the frequency, regularity and proximity test "is too exacting, especially where, as here, the plaintiff has produced expert evidence . . . to the effect that every encounter with an asbestos product contributes significantly to the contracting of asbestosis").

While defendant acknowledges that no North Dakota state appellate court has adopted the frequency, regularity and proximity test, it points to one trial court in North Dakota that applied this stringent test in 2005 in granting the defendants' non-exposure motions. See Def.'s Mot. at Ex. 5, Memorandum Decision and Order Granting Motions for Summary Judgment on Non-exposure Claim, Grand Forks Asbestos – Set 19 (Civ. No. 18-07-C-1928). In response, plaintiffs argue that in April 1991 prior to the creation of MDL 875, United States Magistrate Judge Karen K. Klein of the District of North Dakota, ruling on non-exposure motions against other plaintiffs in the present plaintiffs' case group, refused to apply the test. See Pl.'s Resp. at Ex. 6, Recommendation and Order dated Apr. 5, 1991 (Klein, J.), at pp. 2-4.[3]

Because the Supreme Court of North Dakota has not addressed the precise question of the application of the frequency, regularity and proximity test, this court typically would be tasked with predicting how the North Dakota Supreme court would decide that question. To do so, generally, this court would "'look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have

---

[3]     The district court denied the objections filed against Judge Klein's Report and Recommendation.

addressed the issue,' as well as to 'analogous decisions, considered dicta, scholarly works, and any other reliable data.'" Norfolk Southern Ry. Co. v. Basell USA Inc., 512 F.3d 86, 92 (3d Cir. 2008) (quoting Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1445 (3d Cir. 1996)). "Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006) (quoting Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273-74 (3d Cir. 1985)).  However, this court declines at this time to predict whether the North Dakota Supreme Court would apply the frequency, regularity and proximity test because it is not necessary to dispose of the present motions for summary judgment.  See Bossert v. Keene Corp., 1994 WL 108844, at *1 (8th Cir. Mar. 31, 1994) (non-precedential opinion) (declining to predict whether Supreme Court of North Dakota would adopt the frequency, regularity and proximity test because plaintiff "failed to produce substantial evidence of exposure" to defendant's products).

**B.      Sufficient evidence of exposure – Motions denied**

For the reasons that follow, the court finds that plaintiffs Glaser, Denzel, Willson, Poppke, Loeb, Ketterling and Gilchrist have presented sufficient evidence of exposure to defendant's asbestos-containing product.  These plaintiffs have established causation under North Dakota law because the evidence is sufficient for a jury to find that defendant's product "had a substantial part in bringing about the [plaintiff's] injury."  See Beilke by Beilke v. Coryell, 524 N.W.2d 607, 609 (N.D. 1994).  Such evidence supports a reasonable inference of substantial causation, even considering the frequency, regularity and proximity of the exposure to

7

defendant's product. The evidence presented by these plaintiffs may or may not persuade a jury to return a favorable verdict, but it is at least sufficient to raise material issues of fact as to whether their exposure to defendant's product was a substantial factor in causing each plaintiff's injuries.

      **1.**      **Robert Glaser.** Mr. Glaser worked as a pipefitter from 1963 until 1986 for various employers at various residential, commercial and industrial job sites. See Glaser Work History (Def.'s Mot., at Ex. 2). Mr. Glaser alleges exposure to several asbestos-containing products, including, SOS furnace cement. Id. Mr. Glaser testified at deposition that he was familiar with SOS furnace cement. See Pl.'s Resp. at Ex. 4, Glaser Deposition at 198-99. He did not know when he used the product, but believed it was during his employment with Sanitary Plumbing & Heating between 1969 and 1985. Id. He described the SOS furnace cement as a wet product that came in a can, which he applied with a putty knife or his fingers. Id. Mr. Glaser testified that he used "possibly twenty-five" of the cans during his career. Id. Although he testified that use of the SOS product was "probably not dusty," Mr. Glaser also testified that he used a wire brush to scrape off dried furnace cement from his putty knife. Id. at 200. Mr. Glaser has presented credible evidence of his exposure to defendant's asbestos-containing product. The court recommends that the summary judgment motion filed against plaintiff Glaser be denied.

      **2.**      **Richard Denzel.** Mr. Denzel worked as a boilermaker from 1959 until 1988, at various industrial and commercial job sites in Minnesota and North Dakota. (Pl.'s Resp. at Ex. 4.) Mr. Denzel testified at deposition that he used SOS products while working for his father to repair old furnaces. Id. at 188. He worked with his father in the early 1950s and the 1970s for eight years. Id. at 17, 42. The SOS product was used to fill cracks in furnaces. Id. at

188. The product was a wet, premixed cement which came in a can which was applied with a putty knife. Id. at 188-89. If the product dried on the putty knife, Mr. Denzel had to grind it off or scrape it off with a wire brush. Id. at 307-08. Dust was created when the dried furnace cement was ground off or scraped off a surface. Id. Mr. Denzel could not estimate how many times he used the product. Id. at 191-92. Mr. Denzel has presented credible evidence of his exposure to defendant's asbestos-containing product. The court recommends that the summary judgment motion filed against plaintiff Denzel be denied.

    **3.**     **Frank Willson.** Mr. Willson worked for various employers as a plumber/pipefitter on residential and industrial job sites from 1953 until 1981. See Pl.'s Resp. at Ex. 4, work history. He was employed by H.A. Thompson & Sons, a Bismarck, North Dakota mechanical contractor, during the period 1967 to 1970 and during the period 1973 to 1974. Id. Mr. Willson testified that the last time he recalled working with SOS boiler cement was in the late 1960s. (Pl.'s Resp. at Ex. 4, Willson Dep. at 235.) Mr. Willson was unable to specifically recall another job on which an SOS product was used. See Pl.'s Resp. at Ex. 4, Willson Dep. at 236-37. However, he also testified that he specifically recalled using an SOS product while employed by Odes Plumbing & Heating in Bismarck, North Dakota. (Pl.'s Resp. at Ex. 4, Willson Dep. at 237; Pl.'s Resp. at Ex. 4, work history.) Mr. Willson testified, of the time he spent working at Odes Plumbing, one to five percent of his time was spent working with SOS boiler cement. (Def.'s Mot. at Ex. 3, Willson Dep. at 165-66.) Mr. Willson has presented credible evidence of his exposure to defendant's asbestos-containing product. The court recommends that the summary judgment motion filed against plaintiff Willson be denied.

4. **Walter Poppke.** Mr. Poppke worked as a pipefitter from at least 1967 until 1987. (Pl.'s Resp., at Ex. 4, work history.) He was employed by H.A. Thompson & Sons, a Bismarck, ND, mechanical contractor, at various residential, commercial and industrial job sites in North Dakota. Id. Mr. Poppke recalled working with SOS products and also recalled that H.A. Thompson & Sons kept SOS "refractory mud" "in the shop" for its employees to use, but he was unable to recall a specific job site on which he used an SOS product. (Def.'s Mot., Ex. 3 at 215; Pl.'s Resp., at Ex. 4, Poppke Dep. at 290.) Mr. Poppke has presented credible evidence of his exposure to defendant's asbestos-containing product. The court recommends that the summary judgment motion filed against plaintiff Poppke be denied.

5. **Teanus Loeb.** From 1958 through 1984, Mr. Loeb worked as a pipefitter on various residential, commercial and industrial job sites in North Dakota for a variety of employers, including H.A. Thompson & Sons, a Bismarck, North Dakota based mechanical contractor. (Pl.'s Resp. at Ex. 4, work history.) Mr. Loeb's deposition was taken on July 26, 1990 and also on February 17, 1992. (Pl.'s Resp. at Ex. 4, Loeb Deps.) Mr. Loeb testified that he used furnace cement to seal joints on furnaces; he spent approximately thirty to forty percent of his time applying furnace cement. (Pl.'s Resp. at Ex. 4, Loeb 1990 Dep. at 201.) In addition, approximately ten to fifteen percent of the time it was necessary to sand down or grind down the cement after it dried. (Pl.'s Resp. at Ex. 4, Loeb 1990 Dep. at 199-202.) Mr. Loeb specifically recalled using SOS brand furnace cement on a job while working for H.A. Thompson & Sons some time between 1958 and 1968. See Pl.'s Resp. at Ex. 4, Loeb 1990 Dep. at 175-76, 204-06. The project lasted for two weeks and consisted of a conversion of a boiler from coal to oil at a school in Cannon Ball, North Dakota. Id. Mr. Loeb also recalled using SOS furnace cement at a

project at a church.  (Pl.'s Resp. at Ex. 4, Loeb 1990 Dep. at 208-09.)  The project lasted four

days; he spent approximately one day applying furnace cement.  Id.  Mr. Loeb has presented

credible evidence of his exposure to defendant's asbestos-containing product.  The court

recommends that the summary judgment motion filed against plaintiff Loeb be denied.

      **6.**      **Martin Ketterling.**  Mr. Ketterling worked as a pipefitter from 1962

through the early 1990s and was employed by various mechanical contractors in South Dakota

and North Dakota on residential, commercial, and industrial job sites.  (Pl.'s Resp. at Ex. 4, work

history.)  Mr. Ketterling testified that he used SOS furnace cement for sealing boilers.  (Pl.'s

Resp. at Ex. 4, Ketterling Dep. at pp. 340, 558.)  He described the furnace cement as a putty with

an abrasive quality.  Id. at 340-41.  Although he testified that application of the product was not a

dusty process and that he mostly tried to clean up the product before it dried, he also testified that

the furnace cement dried into a hard substance.  Id. at 340-41, 560-61, 564.  Mr. Ketterling

explained that he tried to "avoid getting it on ourselves.  Sometimes got it on your fingers or

hands, you know, or dropped a little bit on the floor or something, had to scrape it up, clean it,

wipe it up.  Sometimes you'd get a gob of it or two on your clothes."  Id. at 563.  Mr. Ketterling

estimated that he used SOS furnace cement approximately twenty times in his career, most likely

during the 1960s and early 1970s while he was employed by Friske Plumbing & Heating.  Id. at

565-66.  Mr. Ketterling has presented credible evidence of his exposure to defendant's asbestos-

containing product.  The court recommends that the summary judgment motion filed against

plaintiff Ketterling be denied.

      **7.**      **Boyd Gilchrist.** On March 1, 1991, defendant filed a motion for summary

judgment on nonexposure grounds against Mr. Gilchrist, which was denied by Judge Klein in her

April 1991 Report and Recommendation.  (Pl.'s Resp. at 4 n.1.)  The discovery period had closed

prior to the first summary judgment motion and has not reopened; therefore, the evidence

presently before the court is the same evidence presented to Judge Klein.  Thus, there are no

circumstances which would justify reconsideration of the motion which was already decided by

Judge Klein.  See In re: Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 438-43 (3d

Cir. 2009) (under the law of the case doctrine an MDL transferee court may not vacate or modify

a protective order except in extraordinary circumstances).  The court recommends that the

summary judgment motion filed against plaintiff Gilchrist be denied.

  **C.**  **Insufficient evidence of exposure – Motions granted**

   With respect to the remaining plaintiffs, plaintiffs Hanson, Vogel, Unser,

Riedinger and Morrell, the court finds that even under the more liberal standard advocated by

plaintiffs, there is insufficient evidence to permit these plaintiffs to proceed to trial against

defendant.  The evidence proffered by these plaintiffs does not allow a potential finding that such

plaintiffs were exposed to defendant's product.  See Barbie v. Minko Const., Inc., 766 N.W.2d

458 (N.D. 2009) (testimony offered by plaintiff in negligence action was too speculative and

unsupported to create an issue of material fact sufficient to survive summary judgment).  See also

Bossert, 1994 WL 108844, at *1 (affirming grant of summary judgment when only "vague

testimony" was offered and any inference of plaintiff's exposure to defendant's products

containing asbestos was "entirely speculative").

   **1.**  **Joe Vogel.**  Mr. Vogel worked as a plumber and pipefitter from 1953 until

1982 for various employers at numerous residential, commercial and industrial job sites.  (Pl.'s

Resp. at Ex. 4, work history.)  Mr. Vogel was deposed on November 6, 1990 and April 8, 1992.

<u>See</u> Pl.'s Resp. at Ex. 4, excerpts from Vogel 1990 Dep. and excerpts from Vogel 1992 Dep.  Mr.

Vogel testified that he set up residential and commercial boilers while working for H.A.

Thompson & Sons.  Plaintiff's work history does <u>not</u> specifically list H.A. Thompson as an

employer; however, Mr. Vogel testified at his deposition that he worked for H.A. Thomspon.

<u>See e.g.</u>, Pl.'s Resp. at Ex. 4, Vogel 1990 Dep. at 201-02.  He was unable to provide the years

during which he worked for H.A. Thompson.  (Def.'s Mot. at Ex. 3, Vogel 1990 Dep. at 219-20.)

He used asbestos-containing furnace cement which came in a can while working for H.A.

Thompson; however, Mr. Vogel could not recall the brand name of the furnace cement he used

while working at H.A. Thompson.  (Pl.'s Resp. at Ex. 4, Vogel 1990 Dep. at 202.; Def.'s Mot. at

Ex. 3, Vogel 1990 Dep. at 219-20.)  Mr. Vogel described the furnace cement as having the

consistency of "thick butter" and noted that dust was created when the cement was scraped off

his tools after it dried.  (Def.'s Mot. at Ex. 3, Vogel 1990 Dep. at 218.)  Mr. Vogel also stated

that he scraped furnace cement from a boiler after it dried if excess cement was applied during

the application process.  <u>Id.</u> at 218-19.

   Although Mr. Vogel testified in some detail about the use of furnace cement

during his employment at H.A. Thompson, and the dust that was generated by its use, Mr. Vogel

was unable to identify even the decade during which he worked at H.A. Thompson.  During his

1990 deposition, Mr. Vogel testified as follows:

> Q: Sir, I note that you worked with H.A. Thompson at various times.  Can
>   you give me any sense of when most of your work with furnace cement
>   would have occurred?
> A: No.
> Q: Do you recall working with it in '58 and '59?
> A: I couldn't put no year on it.
> Q: How about '72 through '76?

| A: | I just said I couldn't put a year on it. |
|---|---|
| Q: | I assume then, that that's true for the other times you were there as well? |
| A: | Right. |
| | * * * |
| Q: | So you don't know what decade you worked with furnace cement? |
| A: | No. |
| Q: | How often do you think you applied it? |
| A: | I wouldn't know.  Whenever it was needed. |
| Q: | How often do you think it would have been needed? |
| A: | When we put a boiler up. |
| Q: | And how often do you think you did that? |
| A: | I don't know. |
| Q: | You think it would have been fewer than ten times? |
| A: | I'm not gonna guess at it. |
| Q: | Okay.  And, once again, you have no idea of the manufacturer of the furnace cement. |
| A: | No. |

(Def.'s Mot. at Ex. 3, Vogel 1990 Dep. at 219-20.)  Although he testified that he worked at H.A.

Thompson, the work history submitted by plaintiff with his response to the motion for summary

judgment does not list H.A. Thompson amongst the many employers plaintiff had between 1953

and 1982.  Mr. Vogel offers the testimony of Richard Roe to support his proposition that Globe,

Inc. supplied SOS furnace cement to H.A. Thompson from some time before 1962 to 1967, but

there is no way of verifying from the evidence presented by plaintiff that plaintiff worked at H.A.

Thompson during the relevant time period when Globe supplied SOS furnace cement to H.A.

Thompson.  The evidence proffered by plaintiff is too speculative and vague to support his

contention.  Accordingly, the court recommends that defendant's motion for summary judgment

be granted against plaintiff Vogel.

     **2.**     **Frank Unser.**  Mr. Unser worked as a plumber and pipefitter from 1956

until the late 1980s for various employers at numerous residential, commercial and industrial job

sites.  (Pl.'s Resp. at Ex. 4, work history.)  He worked for H.A. Thompson & Sons, a Bismarck,

North Dakota based mechanical contractor during the years 1956 through 1958. Id. Mr. Unser's deposition was taken on September 24, 1990. Mr. Unser testified that the furnace cement that was used in the 1950s came in a burlap sack and was not premixed. (Def.'s Mot. at Ex. 3, Unser Dep. at 370.) When asked whether he worked with any premixed furnace cement at any time, Mr. Unser replied, "Not that I know of that I ever worked with it." Id. at 371.

Mr. Unser notes that Richard Roe, on behalf of Globe, Inc., a wholesale plumbing and heating distributor, testified at his deposition that Globe, Inc., sold SOS furnace cement to a number of plumbing and heating contractors in the Bismark-Mandan, ND area from at least 1962 when Mr. Roe became branch manager for Globe in Bismarck, through 1967. (Pl.'s Resp. at Ex. 3, Roe Dep. at 25, 43.) Mr. Roe also testified that SOS brand furnace cement was already stocked by Globe at the time he became branch manager in 1962. Id. at 25. The Roe deposition indicates that SOS was Globe's primary, "basically exclusive" supplier of furnace cement from 1962 to 1967. Id. at 43. According to Mr. Roe, Globe supplied Sanitary Plumbing and Heating and H.A. Thompson & Sons with plumbing and heating products. Id. at 55-56.

This evidence presented by plaintiff is insufficient to support the inference that plaintiff Unser worked with defendant's product. Mr. Unser testified that he worked for H.A. Thompson & Sons during the years 1956 through 1958. Although Mr. Roe testified that SOS products were already stocked by Globe prior to 1962, this evidence is too speculative to support the inference that H.A. Thompson plumbers used SOS products in the late 1950s when Mr. Unser was employed by H.A. Thompson. Moreover, Mr. Unser testified that he never worked with premixed furnace cement and that the furnace cement he used in the 1950s came in a burlap sack. However, the record establishes that SOS furnace cement was a premixed cement which

came in a can.  Numerous other plaintiffs have described it as a putty-like or wet substance.

Based on the foregoing, the court concludes that the evidence presented by Mr. Unser does not

support the proposition that Mr. Unser worked with SOS furnace cement.  Accordingly, the court

recommends that defendant's motion for summary judgment be granted against Mr. Unser.

    **3.**      **Leslie Hanson.**  Mr. Hanson worked as a pipefitter from 1955 until 1982

for various employers at numerous residential, commercial, and industrial job sites in North

Dakota.  (Pl.'s Resp. at Ex. 4, work history.)  Mr. Hanson's work history indicates that he was

employed by H.A. Thompson & Sons, a Bismarck, North Dakota based mechanical contractor,

from 1955 until 1956 and from 1957 to 1961.  <u>Id.</u>  Mr. Hanson's deposition was taken December

3, 1991.  (Pl.'s Resp. at Ex. 4, Hanson Dep.)  Mr. Hanson testified that he worked, repairing

boilers, for H.A. Thompson "early on in . . . [his] career."  (Pl.'s Resp. at Ex. 4, Hanson Dep. at

91-92.)  He testified that he used furnace cement as part of his work, but he could not identify

any of the brands of furnace cement which were used.  <u>Id.</u> at 103.

    Mr. Hanson notes that Richard Roe, on behalf of Globe, Inc., a wholesale

plumbing and heating distributor, testified at his deposition that Globe, Inc., sold SOS furnace

cement to a number of plumbing and heating contractors in the Bismark-Mandan, ND area from

at least 1962 when Mr. Roe became branch manager for Globe in Bismarck, through 1967.  (Pl.'s

Resp. at Ex. 3, Roe Dep. at 25, 43.)  Mr. Roe also testified that SOS brand furnace cement was

already stocked by Globe at the time he became branch manager in 1962.  <u>Id.</u> at 25.  The Roe

deposition indicates that SOS was Globe's primary, "basically exclusive" supplier of furnace

cement from 1962 to 1967.  <u>Id.</u> at 43.  Specifically, according to Mr. Roe, Globe supplied H.A.

Thompson & Sons with plumbing and heating products.  <u>Id.</u> at 55-56.

Mr. Hanson also presents the testimony of Walter Poppke that H.A. Thompson kept SOS brand furnace cement "in the shop."  (Pl.'s Resp. at Ex. 5, Poppke Dep. at 290.)  Mr. Hanson offers this testimony in support of his argument that plumbers and pipefitters who worked for H.A. Thompson, therefore, used SOS brand furnace cement.

However, the foregoing evidence does not create an issue of material fact sufficient to survive summary judgment.  Mr. Hanson's work history indicates that he was employed by H.A. Thompson prior to 1962.  Mr. Roe testified that Globe stocked SOS furnace cement prior to his arrival at Globe's Bismarck location in 1962 and that Globe supplied H.A Thompson with plumbing and heating products.  Furthermore, Mr. Poppke testified that H.A. Thompson kept SOS furnace cement in the shop.  Plaintiff essentially asks this court to find that Mr. Roe's testimony coupled with Mr. Poppke's testimony supports the proposition that Mr. Hanson, therefore, used SOS furnace cement while employed by H.A. Thompson.  However, this court finds that this evidence is too speculative to support such an inference.  Plaintiff's theory that Mr. Hanson used SOS furnace cement simply because he worked at H.A. Thompson is speculative, at best.  Accordingly, the court recommends that defendant's motion for summary judgment be granted against plaintiff Hanson.

4.      **Pete Riedinger.**  Mr. Riedinger was employed as a plumber and pipefitter from 1944 to 1982 for various employers at numerous residential, commercial and industrial job sites.  (Pl.'s Resp. at Ex. 4, work history.)  He worked for H.A. Thompson & Sons, a Bismarck, North Dakota based mechanical contractor from 1944 to 1968, and in the years 1973, 1979 and 1980.  Id.  Mr. Riedinger's deposition was taken on October 29, 1990, see Def.'s Mot. at Ex. 3, and March 18, 1992, see Pl.'s Resp. at Ex. 4.  During his 1990 deposition, when asked whether

he had ever heard of SOS Company or what kind of product they make, Mr. Riedinger responded that he did not recall the company name, nor did he know what kind of products they make. (Def.'s Mot. at Ex. 3, Riedinger Dep. at 405-06.) Mr. Riedinger testified that he worked with an asbestos product to seal joints; it was a powder-like substance that came in a bag and which he mixed with water. (Def.'s Supp. Statement of Undisputed Facts, Riedinger Dep. at 144-45, 166-67.)[4] He was not able to identify the brand name of this substance. Id. In a 1992 deposition, Mr. Riedinger testified that he installed fireboxes with firebrick while employed by H.A. Thompson. (Def.'s Supp. Statement of Undisputed Facts, Riedinger Dep. at 45-47.) He stated that he used a product called Cal-Set which they mixed with mortar to lay the firebrick. Id. The Cal-Set came in five gallon buckets. Id.

Mr. Riedinger notes that Richard Roe, on behalf of Globe, Inc., a wholesale plumbing and heating distributor, testified at his deposition that Globe, Inc., sold SOS furnace cement to a number of plumbing and heating contractors in the Bismark-Mandan, ND area from at least 1962 when Mr. Roe became branch manager for Globe in Bismarck, through 1967. (Pl.'s Resp. at Ex. 3, Roe Dep. at 25, 43.) Mr. Roe also testified that SOS brand furnace cement was already stocked by Globe at the time he became branch manager in 1962. Id. at 25. The Roe deposition indicates that SOS was Globe's primary, "basically exclusive" supplier of furnace cement from 1962 to 1967. Id. at 43. Specifically, according to Mr. Roe, Globe supplied H.A.

---

[4]    At oral argument the court permitted the parties to supplement the summary judgment record with deposition excerpts that were inadvertently omitted from the prior summary judgment filings. See Docs. 22 (Supplemental Statement of Undisputed Facts of Defendant S.O.S. Products Company, Inc. in Support of Motion for Summary Judgment Based Upon Lack of Exposure) and 23 (Pl.'s letter response in opposition to motion for summary judgment).

Thompson & Sons with plumbing and heating products.  Id. at 55-56.

　　　　Mr. Riedinger also presents the testimony of Walter Poppke that H.A. Thompson kept SOS brand furnace cement "in the shop."  (Pl.'s Resp. at Ex. 5, Poppke Dep. at 290.)  Mr. Riedinger offers this testimony in support of his argument that plumbers and pipefitters who worked for H.A. Thompson, therefore, used SOS brand furnace cement.

　　　　The evidence of record does not support plaintiff's contention that he worked with SOS furnace cement.  Nowhere in the deposition excerpts provided by the parties in support of, and in opposition to, the motion for summary judgment does Mr. Riedinger mention working with furnace cement that fits the SOS product description.[5]  Rather, the products discussed by plaintiff during deposition do not fit the description of an SOS product.  Like plaintiff Hanson, plaintiff Riedinger essentially asks this court to find that Mr. Roe's testimony coupled with Mr. Poppke's testimony supports the proposition that Mr. Riedinger used SOS furnace cement while employed by H.A. Thompson simply because H.A. Thompson stocked SOS products.  However, this court finds the evidence too speculative to support such an inference.  Plaintiff's theory that Mr. Riedinger used SOS furnace cement simply because he worked at H.A. Thompson during a time when H.A. Thompson stocked SOS furnace cement is speculative, at best.  Accordingly, the court recommends that defendant's motion for summary judgment be granted against plaintiff Riedinger.

---

[5]　　　　During oral argument, it was noted that plaintiff Teanus Loeb testified during his deposition that while working on a job with plaintiff Riedinger, they used SOS furnace cement. (N.T. 7/14/10 at 133-37.)  Plaintiff Riedinger, however, has not established that this evidence would be admissible at trial in support of his contention that he used an SOS asbestos-containing product.  Plaintiff Riedinger cannot rely upon this evidence in opposition to the motion for summary judgment.

5.     **Stephen Morrell.**  Mr. Morrell was employed as a plumber and pipefitter from 1948 to the late 1980s for various employers at numerous residential, commercial and industrial job sites.  (Pl.'s Resp. at Ex. 4, work history.)  He worked for H.A. Thompson & Sons, a Bismarck, North Dakota based mechanical contractor from 1961 to 1962, and at various times during the 1960s and 1970s.  Id.  Mr. Morrell's work history also represents that he worked for Sanitary Plumbing & Heating from 1954 to1961.  Id.

Defendant attached to its Motion excerpts from a deposition taken on December 10, 1990.  (Def.'s Mot. at Ex. 3, Morrell 1990.)  At the time of that deposition, Mr. Morrell was unable to recall the name S.O.S. Products Company.  Id. at 472.  Mr. Morrell testified that he has never worked with furnace cement that came in a can.  Id. at 472, 476, 480.  The furnace cement he was familiar with came in a bag.  Id. at 472, 476-80.

Plaintiff attached to his response to defendant's Motion excerpts from a deposition taken on February 18, 1992.  (Pl.'s Resp. at Ex. 4.)  Mr. Morrell testified about his work installing and removing "package boilers."  Id.  But Mr. Morrell does not mention furnace cement in the deposition excerpts that were attached to plaintiff's brief.

Mr. Morrell notes that Richard Roe, on behalf of Globe, Inc., a wholesale plumbing and heating distributor, testified at his deposition that Globe, Inc., sold SOS furnace cement to a number of plumbing and heating contractors in the Bismark-Mandan, ND area from at least 1962 when Mr. Roe became branch manager for Globe in Bismarck, through 1967.  (Pl.'s Resp. at Ex. 3, Roe Dep. at 25, 43.)  Mr. Roe also testified that SOS brand furnace cement was already stocked by Globe at the time he became branch manager in 1962.  Id. at 25.  The Roe deposition indicates that SOS was Globe's primary, "basically exclusive" supplier of furnace

cement from 1962 to 1967.  Id. at 43.  Specifically, according to Mr. Roe, Globe supplied H.A.

Thompson & Sons and Sanitary Plumbing & Heating with plumbing and heating products.  Id. at

55-56.

Mr. Morrell also presents the testimony of Walter Poppke that H.A. Thompson

kept SOS brand furnace cement "in the shop."  (Pl.'s Resp. at Ex. 5, Poppke Dep. at 290.)  Mr.

Morrell offers this testimony in support of his argument that plumbers and pipefitters who

worked for H.A. Thompson, therefore, used SOS brand furnace cement.

The foregoing evidence does not create an issue of material fact sufficient to

survive summary judgment because the evidence of record does not support plaintiff's contention

that he worked with SOS furnace cement.  The deposition excerpts provided by the parties in

support of, and in opposition to, the motion for summary judgment do not support the contention

that Mr. Morrell worked with furnace cement that fits the SOS product description.  Rather, the

products discussed by plaintiff during depositions do not fit the description of an SOS product.

Instead, like plaintiffs Hanson and Riedinger, plaintiff Morrell essentially asks this court to find

that Mr. Roe's testimony coupled with Mr. Poppke's testimony supports the proposition that Mr.

Morrell used SOS furnace cement while employed by H.A. Thompson and/or Sanitary Plumbing

simply because those companies stocked SOS products.  Again, this court finds such evidence

too speculative to support that inference.  The court finds plaintiff's theory that Mr. Morrell used

SOS furnace cement simply because he worked at H.A. Thompson and Sanitary Plumbing during

a time when those companies stocked SOS furnace cement is speculative.  Accordingly, the court

recommends that defendant's motion for summary judgment be granted against plaintiff Morrell.

## III.   CONCLUSION

Accordingly, the court makes the following:

### R E C O M M E N D A T I O N

AND NOW, this 30th day of July, 2010, upon consideration of defendant's Motions, plaintiffs' responses thereto, and defendant's replies, it is respectfully recommended that the summary judgment motions of defendant S.O.S. Products Company, Inc. be **DENIED** with respect to plaintiffs Glaser, Denzel, Willson, Poppke, Loeb, Ketterling and Gilchrist and that the summary judgment motions of defendant S.O.S. Products Company, Inc. be **GRANTED** with respect to plaintiffs Vogel, Unser, Hanson, Riedinger and Morrell.

The court also recommends that plaintiffs' claims for conspiracy, deceit, fraud, market share, enterprise liability, and alternative liability in each of the above-captioned cases be **DISMISSED WITH PREJUDICE**.

The parties may file objections to this Report and Recommendation. See Loc. R. Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

_/s/  Thomas J. Rueter_____
THOMAS J. RUETER
Chief United States Magistrate Judge